UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JACQUELINE K. HAMILTON JOHNSON,

                Plaintiff,

      v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                Defendant.

Case No. C16-205-JCC

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Jacqueline K. Hamilton Johnson seeks review of the denial of her application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Ms. Johnson contends the ALJ erred in evaluating the medical opinions of: (1) Jamie Phifer, M.D.; (2) Jennifer Azen, M.D.; and, (3) Jay Wellington, M.S.W. Dkt. 12. Ms. Johnson contends these errors resulted in a residual functional capacity (RFC) determination that failed to account for all of her limitations. *Id.* Ms. Johnson contends this matter should be reversed and remanded for further proceedings. Dkt. 12 at 18. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In December 2012, Ms. Johnson applied for benefits, alleging disability as of November 29, 2012. Tr. 14, 217-226. Ms. Johnson's applications were denied initially and on reconsideration. Tr. 14, 144-147, 151-155. After the ALJ conducted a hearing on March 17, 2014, the ALJ issued a decision finding Ms. Johnson not disabled. Tr. 14-27.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Johnson has not engaged in substantial gainful activity since November 29, 2012, the alleged onset date.

**Step two:** Ms. Johnson has the following severe impairments: major depressive disorder vs. depressive disorder; anxiety disorder; history of bilateral rotator cuff tears, status-post distal clavicle excision of right shoulder and bilateral open acromioplasties; and cervical degenerative disc disease.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Ms. Johnson can perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she cannot reach overhead. Ms. Johnson cannot climb ladders, ropes, or scaffolds, or crawl. She should avoid concentrated exposure to vibrations and hazards. She can perform simple, routine tasks and follow short simple instructions. Ms. Johnson can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period. Ms. Johnson would have an average ability to perform sustained work activities (i.e. can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. Ms. Johnson needs a work environment that is predictable and with few work setting changes.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

**Step four:** Ms. Johnson cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Johnson can perform, she is not disabled.

Tr. 14-27. The Appeals Council denied Ms. Johnson's request for review making the ALJ's decision the Commissioner's final decision. Tr. 1-6.[4]

## DISCUSSION

### A. Medical Opinion Evidence

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* at 830-31. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In order to reject the opinion of a provider who is not an acceptable medical source, the ALJ must give reasons germane to that opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" (internal citations omitted)).

### 1. Jamie Michel Phifer, M.D.

Ms. Johnson contends the ALJ harmfully erred in evaluating the treating opinion of Dr.

---
[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

Phifer. Dkt. 12 at 4-5. The Court agrees.

On examination in March 2012, Dr. Phifer indicated that Ms. Johnson presented with shoulder pain and that her examination was consistent with impingement. Tr. 865. She further indicated that Ms. Johnson had previously had surgery on both shoulders for rotator cuff injuries secondary to repetitive use. *Id.* Based on her examination, Dr. Phifer opined that Ms. Johnson should not continue work as a meat wrapper. Tr. 866. She further opined that it was "not appropriate" for Ms. Johnson to be "doing further upper body repetitive motions at this time" as "[f]urther repetitive movement of her shoulders will likely worsen her symptoms." Tr. 865-866. In April 2013, Dr. Phifer completed a Physical Functional Evaluation form. Tr. 876-879. Dr. Phifer indicated Ms. Johnson had pain with passive range of motion in her left shoulder above 110 degrees of abduction and pain with active abduction bilaterally. Tr. 877. She indicated Ms. Johnson had positive subscapular lift bilaterally and mild positive "empty can test" left greater than right bilaterally. *Id.* Dr. Phifer opined that Ms. Johnson was capable of light work but should perform no overhead reaching and was moderately limited in her ability to lift, carry, push, pull and reach. Tr. 877-878.

The ALJ gave some weight to Dr. Phifer's March 2012 opinion that Ms. Johnson should not work as a meat packer. Tr. 23. Specifically, the ALJ agreed that "the claimant's residual functional capacity would preclude her from performing past work but it would not preclude the claimant from performing other types of work that exist in the national economy." *Id.* However, the ALJ failed to specifically address Dr. Phifer's opinion that it was "not appropriate" for Ms. Johnson to be "doing further upper body repetitive motions at this time." Tr. 865-866. The ALJ does generally indicate that Dr. Phifer's examination findings "were mostly normal", which, the ALJ indicates, "suggests" she relied on Ms. Johnson's subjective complaints, which the ALJ

found not fully credible. Tr. 23. A "physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r Soc. Sec. Admin*, 169 F.3d 595, 602 (9th Cir. 1999) (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). However, an ALJ may not reject an examining physician's opinion by questioning the credibility of a claimant's complaints, "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008). Here, contrary to the ALJ's finding, Dr. Phifer's examination findings were not "mostly normal." *Id.* Rather, Dr. Phifer performed a full examination of Ms. Johnson which she found consistent with impingement. Tr. 865. Dr. Phifer specifically noted that Ms. Johnson had both a positive Neer's sign and a positive Hawkins sign indicating rotator cuff impingement. *Id.* Dr. Phifer also noted that Ms. Johnson had some "give way" weakness due to pain at abduction, was tender to palpation at the subacromial area and that her active and passive range of motion was limited above 180 degrees due to pain. *Id.* Dr. Phifer also indicated that Ms. Johnson had aching pain at rest that was worse with overhead movement. Tr. 838. In light of these objective findings supporting Dr. Phifer's opinion, substantial evidence does not support the conclusion that Dr. Phifer relied more heavily on Ms. Johnson's self-reports than on her own clinical findings. Accordingly, to the extent the ALJ intended to discount Dr. Phifer's opinion prohibiting upper body repetitive motions on this basis, he erred. Moreover, this error was not harmless as the ALJ failed to either properly reject or include this limitation in the RFC or in the hypothetical to the vocational expert (VE), thereby affecting the ALJ's step five determination. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination'" (quoting

*Stout*, 454 F.3d at 1055-56)).

The Commissioner argues that the ALJ reasonably gave greater weight to Dr. Phifer's more recent April 2013 opinion that Ms. Johnson was limited to "light work with no overhead reaching" than to Dr. Phifer's March 2012 opinion. Dkt. 18 at 3. However, the ALJ did not offer this as a rationale for rejecting Dr. Phifer's March 2012 limitation on upper body repetitive motions and, as such, it constitutes an improper post-hoc rationalization which the Court cannot rely upon in order to reject Dr. Phifer's opinion. *See Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 1995) (The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").[5] Moreover, the Commissioner neglects to mention that Dr. Phifer's April 2013 opinion did not only limit Ms. Johnson to light work with no overhead lifting but that she also found moderate[6] limitations in Ms. Johnson's ability to push, pull and reach due to bilateral rotator cuff tears. Tr. 877-878. Thus, Dr. Phifer's March 2012 limitation on upper body repetitive motions is not substantially inconsistent or undermined by her April 2013 opinion. Tr. 863-866, 876-879. Moreover, the ALJ separately erred in failing to address entirely Dr. Phifer's April 2013 opinion that Ms. Johnson was moderately limited in her ability to push, pull and reach. Tr. 877-878. This error was also not harmless as the ALJ failed to either properly reject or include these limitations in the RFC or in the hypothetical to the VE, thereby impacting the ALJ's step five determination. *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social

---

[5] The Commissioner also offered several other post-hoc rationalizations for the ALJ's rejection of Dr. Phifer's March 2012 opinion including that Dr. Phifer did not indicate the limitation would be ongoing and that there were other conflicting medical opinions which the ALJ gave more weight. Dkt. 18 at 4. However, the ALJ did not cite these reasons as a basis for rejecting Dr. Phifer's March 2012 opinion and the Court will not speculate as to what the ALJ may have been thinking. *See Bray*, 554 F.3d at 1225.
[6] "Moderate" is defined as "significant interference with the ability to perform one or more basic work-related activities." Tr. 877.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

security cases are harmless if they are 'inconsequential to the ultimate nondisability determination'" (quoting *Stout*, 454 F.3d at 1055-56)).

The ALJ indicates in a footnote that he had posed an alternative hypothetical to the VE in which he added the limitation of frequent reaching below shoulder level, frequent handling, and frequent fingering. Tr. 26, n. 5. The VE indicated that, with these additional limitations, an individual could still perform the jobs of production line solderer and bench assembler. *Id.* Based on this testimony the ALJ found that, in the alternative, "even if the claimant were further limited a finding of not disabled is therefore appropriate …" *Id.* The Commissioner argues that even if the ALJ erred in evaluating Dr. Phifer's opinions any error is harmless as "a requirement to reach or handle frequently is not necessarily inconsistent with an inability to perform repetitive arm movements." Dkt. 18 at 6. However, in the first instance, it is unclear whether the ALJ even intended these additional restrictions to account for Dr. Phifer's limitations of no repetitive upper extremity movement and/or moderate limitation on reaching, as the ALJ fails to address those opinions entirely. "A reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 80 F.3d 487, 492 (9th Cir. 2015); *see also Marsh*, 792 F.3d at 1172 (a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ"). Rather, "[w]e are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir.2003). The ALJ made no finding at all with respect to these portions of Dr. Phifer's opinions. Thus, in order to find this error harmless, the Court would be required to make independent findings beyond those made by the ALJ.

Moreover, the ALJ's alternative hypothetical does not directly incorporate the limitations expressed in Dr. Phifer's opinions but employs different terminology. *See Gardner v. Astrue*,

257 Fed.Appx. 28, 30 (9th Cir. 2007). Without additional evidence or development of Dr. Phifer's opinion, substantial evidence does not support the conclusion that a *limitation* to frequent reaching and handling would account for a *prohibition* on performing repetitive upper body motions. *See id.* (noting that a hypothetical *limitation* to frequent (or repetitive) use of the hands would not necessarily account for a restriction *precluding* repetitive use of the hands).[7] Thus it is unclear from the VE's testimony whether a person who was precluded from performing upper body repetitive motions could perform the jobs of production line solderer and bench assembler. Tr. 26. As such, the Court cannot properly conclude that the ALJ's error in failing to address these opinions was harmless.[8] *See Marsh*, 792 F.3d at 1173 ("ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' …[and] 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" (quoting *Stout*, 454 F.3d at 1055-56)).

Accordingly, on remand, the ALJ should evaluate the portion of Dr. Phifer's March 2012 opinion that it was "not appropriate" for Ms. Johnson to be "doing further upper body repetitive motions at this time", as well as the portion of Dr. Phifer's April 2013 opinion that Ms. Johnson was moderately limited in her ability to push, pull and reach. Tr. 865-866, 877-878.

### 2. Jennifer Azen, M.D.

---

[7] The Court in *Gardner*, 257 Fed.Appx. at 30, n. 5, also noted, in dicta, that "repetitively" may refer to a qualitative characteristic whereas "constantly" and "frequently" may describe a quantitative characteristic. 257 Fed.Appx. at 30, n. 5. The Court further reasoned that "[u]nder this reading, a job might require that an employee use his hands in a repetitive manner *frequently,* or it might require him to use his hands in a repetitive manner *constantly*. *Id.* This is another reason that a limitation to "frequent" reaching and handling does not necessarily account for a prohibition on "repetitive" upper body motion.
[8] Even if the Court were to find that this second hypothetical adequately accounted for Dr. Phifer's limitations of no repetitive upper extremity movement and moderate limitations on reaching, neither the RFC nor the hypotheticals to the VE account for the moderate limitation on pushing and pulling. Here, the jobs identified by the VE foreseeably require the ability to push and/or pull to some degree.

Ms. Johnson contends the ALJ erred in evaluating the treating opinion of Dr. Azen regarding her physical limitations. Dkt. 12 at 5. The Court agrees in part and disagrees in part.

In March 2014, Dr. Azen completed a Physical Impairment Questionnaire. Tr. 1079-1082. Dr. Azen indicated that Ms. Johnson had constant burning, tingling, sharp pain and warmth in her shoulders, elbow, wrist, fingers and the left side of her neck. Tr. 1079. Dr. Azen noted clinical findings and objective signs of "swelling of wrist/shoulders, slight decrease in range of motion in shoulders, decreased strength with abduction of shoulders." *Id.* Dr. Azen opined that Ms. Johnson's impairments would interfere with attention and concentration on a constant basis and that she was unable to do repeated activity with her upper body. Tr. 1080. Dr. Azen opined that Ms. Johnson could sit twenty to thirty minutes at a time, stand thirty to forty-five minutes at a time, and walk ten to twenty minutes at a time, or two and a half blocks, and stand/walk for one hour total in an eight-hour day. Tr. 1081. Dr. Azen indicated that Ms. Johnson would be unable to lift or carry any weight. Tr. 1082. Dr. Azen opined that Ms. Johnson would need to take unscheduled breaks every thirty minutes during an eight-hour workday, would need to lie down or rest every thirty minutes in an eight-hour workday, and had significant limitations in doing repetitive reaching, handling or fingering. Tr. 1081-1082. Dr. Azen further estimated that, on average, Ms. Johnson would be absent from work more than three times a month. Tr. 1082.

The ALJ gave little to no weight to Dr. Azen's opinion. Tr. 24. Specifically, the ALJ notes that Dr. Azen found only a slight decrease in Ms. Johnson's shoulder range of motion, which would not support such significant limitations. *Id.* The ALJ notes that during examinations Ms. Johnson has demonstrated some shoulder range of motion loss, but that the loss generally occurred only above-shoulder height. *Id.* The ALJ further notes that the objective

medical evidence does not support the limitations in sitting, standing and walking. *Id.* He notes that Ms. Johnson's gait is normal and she does not have a severe impairment that limits her lower extremity functioning. *Id.* The ALJ also discounts Dr. Azen's opinion on the grounds that she relied heavily on Ms. Johnson's self-reports but that Ms. Johnson has a history of symptom magnification. *Id.*

Substantial evidence does not support the ALJ's reasons for discounting Dr. Azen's limitations that Ms. Johnson is unable to do repeated activity with her upper body, unable to lift or carry any weight, and that she has significant limitations in doing repetitive reaching, handling or fingering. Tr. 24. Dr. Azen indicates that these limitations are based upon clinical findings and objective signs of "swelling of wrist/shoulders, slight decrease in range of motion in shoulders, and decreased strength with abduction of shoulders." Tr. 1079. The ALJ notes that Ms. Johnson's range of motion is only slightly decreased but does not address the other objective findings of swelling in the wrists and shoulders as well as decreased strength with shoulder abduction. Tr. 24, 1079. These objective findings appear to directly and logically relate to and support the limitations assessed and there is no indication Dr. Azen relied more heavily on Ms. Johnson's self-reports in forming her opinions than on these objective findings. *See Ryan*, 528 F.3d at 1200 (An ALJ may not reject an examining physician's opinion by questioning the credibility of a claimant's complaints, "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). Accordingly, the ALJ erred in rejecting these aspects of Dr. Azen's opinion.

However, the ALJ reasonably discounted Dr. Azen's limitations on walking, standing and sitting as unsupported by objective medical evidence and premised largely on Ms. Johnson's self-reports. Tr. 24. "[A]n ALJ may discredit treating physicians' opinions that are conclusory,

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citation omitted). An ALJ may also discount an opinion that consists solely of check-off reports without explanation of the bases for the conclusions. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Furthermore, as noted above, a physician's opinion that is "'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan*, 169 F.3d at 602 (quoting *Fair*, 885 F.2d at 605). Here there is no evidence Dr. Azen performed any objective testing regarding Ms. Johnson's ability to walk, stand or sit, nor does Dr. Azen explain the bases for her conclusions aside from indicating that the limitation on walking is "due to pain." Tr. 1081. As such, the Court finds the ALJ reasonably rejected these limitations as unsupported by objective medical evidence and based to a large extent on Ms. Johnson's self-reports which the ALJ properly discounted as not fully credible.[9] For the same reasons the ALJ also properly discounted Dr. Azen's opinion that Ms. Johnson needed to take unscheduled breaks every thirty minutes during an eight-hour workday, that she would need to lie down or rest every thirty minutes in an eight-hour workday, and that she would likely miss three or more days per month. Tr. 1081-1082. Dr. Azen offers no explanation of the bases for these limitations nor does the objective evidence appear to support them. *Id.* As such, the ALJ reasonably discounted these opinions as unsupported by objective medical findings and based largely on Ms. Johnson's self-reports.

The ALJ also reasonably discounted Dr. Azen's finding that Ms. Johnson's symptoms would "constantly" interfere with attention and concentration. Tr. 24, 1080. As noted below, during a period of worsening depression, on some psychological examinations Ms. Johnson was

---

[9] Ms. Johnson does not challenge the ALJ's finding that her symptom testimony is not fully credible.

observed to have difficulty in maintaining concentration and attention. Tr. 59-61. However, on several other examinations, particularly prior to this period of worsening depression, although complaining of ongoing physical pain, Ms. Johnson was noted to exhibit fair or normal attention span and concentration. Tr. 837, 840, 875, 901. Accordingly, the ALJ reasonably discounted Dr. Azen's finding that Ms. Johnson's symptoms would "constantly" interfere with her attention and concentration.

In sum, the ALJ erred in discounting Dr. Azen's opinions that Ms. Johnson was unable to do repeated activity with her upper body, unable to lift or carry any weight, and that she had significant limitations in doing repetitive reaching, handling or fingering. Tr. 1079-1082. These errors were not harmless as the ALJ failed to either properly reject or include these limitations in the RFC or in the hypothetical to the VE, thereby impacting the ALJ's step five determination. *See Marsh*, 792 F.3d at 1173.

### 3. Jay Wellington, MSW, and Jennifer Azen, M.D.

Ms. Johnson also contends the ALJ erred in evaluating the treating opinions of Dr. Azen and Mr. Wellington with respect to her mental health limitations. Dkt. 12 at 8-11. The Court agrees in part and disagrees in part.

In March 2014, Mr. Wellington and Dr. Azen completed a Mental Impairment Questionnaire. Tr. 1074-1078. The form reflects a diagnosis of major depressive disorder and a current GAF of 47. Tr. 1074. The form also indicates that Ms. Johnson is moderately impaired in her activities of daily living, markedly limited in maintaining social functioning, experienced frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere), and repeated (three or more) episodes of "deterioration or decompensation in work or work-like settings which cause the individual to

withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior)." Tr. 1073. The form further indicates that, on average, Ms. Johnson's mental impairments or treatment would cause her to be absent from work more than three times a month. Tr. 1071.

The ALJ gave little to no weight to Dr. Azen's and Mr. Wellington's opinions. Tr. 24. Specifically, the ALJ discounts the opinion that Ms. Johnson is markedly limited in social functioning as unsupported by the record, noting that Ms. Johnson lives with her son, spends time with her grandson, and attends church. Tr. 25. A conflict between a doctor's opinion and the claimant's daily activities may justify rejecting that opinion. *See Morgan*, 169 F.3d at 600-02. In this case, however, a holistic review of the record does not reveal a meaningful inconsistency between Dr. Azen's and Mr. Wellington's opinion and Ms. Johnson's daily activities. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (explaining that the record must be read holistically when assessing whether a claimant's activities are inconsistent with a doctor's opinion). The ALJ does not explain why the fact that Ms. Johnson lives with her son and spends time with her grandson undermines Dr. Azen's and Mr. Wellington's opinion. The fact that Ms. Johnson lives with her son and the fact that she is able to spend time with her grandson does not mean she is able to function socially in public or in a work environment. Moreover, during the period Ms. Johnson was being treated by Dr. Azen and Mr. Wellington, which was also when she indicated a worsening in her depressive symptoms, the record appears to indicate that Ms. Johnson had not, in fact, been attending church. Tr. 996. Moreover, Ms. Johnson testified at the hearing that she mostly stayed at home and looked at the TV. Tr. 47. She testified that she left the house only three or four times a month to attend her own doctor's appointments or to accompany her son and grandson to the pediatrician. Tr. 48, 67. Thus, when

viewing the record as a whole, substantial evidence does not support the conclusion that Ms. Johnson's daily activities are inconsistent in any significant way with Dr. Azen's and Mr. Wellington's opinions.

The ALJ also rejects this portion of Dr. Azen's and Mr. Wellington's opinions as based largely on Ms. Johnson's subjective complaints, which the ALJ finds not fully credible. *See Morgan*, 169 F.3d at 602. However, Dr. Azen's and Mr. Wellington's opinions appear to be supported by their own observations. *Ryan*, 528 F.3d at 1200 (An ALJ may not reject an examining physician's opinion by questioning the credibility of a claimant's complaints, "where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations."). Specifically, Dr. Azen and Mr. Wellington's treatment notes indicate that, on some occasions, Ms. Johnson exhibited poor eye contact on examination, was withdrawn, and that her thought process, while linear and sequential, was also persecutory, grandiose and paranoid. Tr. 1049. Moreover, the treatment notes consistently reflect clinical observations that Ms. Johnson was "severely depressed", tearful, and exhibited flat affect. Tr. 981-982, 986, 990-991, 1005, 1007, 1036, 1041, 1049, 1063, 1085, 1087, 1088. In light of these observations, substantial evidence does not support the ALJ's conclusion that Dr. Azen and Mr. Wellington's opinions were based to a large extent on Ms. Johnson's self-reports rather than on their own clinical observations.

The ALJ also discounts Dr. Azen and Mr. Wellington's opinion that Ms. Johnson has frequent deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner on the grounds that "during multiple examinations" Ms. Johnson's concentration has been described as fair or adequate and she is capable of following conversations and instructions. Tr. 25. This was not a sufficient reason to discount this portion

of the opinion. First, the ALJ fails to identify which examinations he is referring to which he believes undermine Dr. Azen and Mr. Wellington's opinion. Tr. 25. Moreover, while it is true that on some occasions Ms. Johnson's concentration was noted to be "fair", on other occasions Ms. Johnson was noted to be easily distracted and needed guidance to move the visit forward, or that she exhibited psychomotor retardation. Tr. 1036, 1087. Moreover, as noted above, Ms. Johnson was frequently observed by Mr. Wellington and Dr. Azen to be severely depressed, tearful, and to exhibit flattened affect. Tr. 981-982, 986, 990-991, 1005, 1007, 1036, 1041, 1049, 1063, 1085, 1087, 1088. Dr. Azen and Mr. Wellington's clinical observations of such significant signs and symptoms tend to support their opinions that Ms. Johnson would experience frequent deficiencies of concentration, persistence and pace.

The ALJ also discounts the opinion that the deficiencies in concentration, persistence and pace, would result in a failure to complete tasks in a timely manner as inconsistent with Dr. Azen and Mr. Wellington's findings that Ms. Johnson could manage her funds. Tr. 25. However, it is not necessarily inconsistent for Dr. Azen and Mr. Wellington to find Ms. Johnson capable of managing a small amount of money to buy food or perhaps pay rent once a month but find her incapable of completing tasks in a timely manner on a daily basis as might be required in a work environment with deadlines or production demands. *Id.* Accordingly, substantial evidence does not support this finding. Moreover, the ALJ also erred in failing to specifically address the opinion that Ms. Johnson would be absent from work more than three times a month. Tr. 1071.

However, the ALJ does reasonably discount Dr. Azen's and Mr. Wellington's opinion that Ms. Johnson has had repeated episodes of deterioration or decompensation in work or work-like setting as unsupported by the record. Tr. 25. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15

medical findings." *Batson*, 359 F.3d at 1195 (internal citation omitted); *see also Crane*, 76 F.3d at 253 (ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions"). Here, the ALJ notes that the record reflects Ms. Johnson was hospitalized once for suicidal ideation but had no other periods of hospitalization. Tr. 25, 1083-1089. Moreover, neither the opinion nor the treatment notes adequately explain the opinion with respect to repeated episodes of deterioration or decompensation in a work or work-like setting. Ms. Johnson also does not directly challenge the ALJ's finding on this issue in her Opening Brief. Dkt. 12. Accordingly, the Court finds the ALJ properly discounted this branch of Dr. Azen's and Mr. Wellington's opinions.

In sum, the ALJ erred in discounting the opinions of Dr. Azen and Mr. Wellington that Ms. Johnson was markedly limited in maintaining social functioning, experienced frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere), and would be absent from work more than three times per month. These errors were harmful as the ALJ neither properly rejected nor included these limitations in the RFC or in the hypothetical to the VE thereby impacting the ALJ's step five finding. *See Marsh*, 792 F.3d at 1173. On remand, the ALJ should reevaluate these opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. Phifer's, Dr. Azen's and Mr. Wellington's

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 16

opinions to the extent provided above, re-determine the RFC, and reevaluate steps four and five with the assistance of a VE as necessary.

DATED this 1st day of June, 2017.

JOHN C. COUGHENOUR
United States District Judge

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 17